# Telinko *v.* Pittsburgh Coal Co., Appellant.

*Negligence—Death—Mines and mining—Employment of minor under sixteen—Act of June 15, 1911, P. L. 983.*

Where a coal company employs within its mine a boy under the age of sixteen in violation of the Act of June 15, 1911, P. L. 983, and the boy is killed while at work inside the mine, his parents may recover damages for his death from the company, although no negligence of the defendant company is charged in the statement of claim, or shown by the evidence, other than the negligent act of employing a minor under sixteen years of age.

In such a case the parents are not precluded from recovery by the fact that the father knew that his son was working in the mine and that his mother received his wages; nor will they be presumed to have known his exact age where it appears they testified they

did not know the boy's exact age until after his death, when they found the date of his birth entered in an old memorandum book.

Argued May 1, 1917.  Appeal, No. 167, April T., 1917, by defendant, from judgment of C. P. Allegheny Co., April T., 1914, No. 1275, on verdict for plaintiffs in case of George Telinko and Maria Telinko v. Pittsburgh Coal Company.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Trespass to recover damages for death of plaintiffs' son.  Before REID, J.

At the trial it appeared that Stephen Telinko, a son of the plaintiffs was killed on February 22, 1913, by a fall of the roof of a chamber in defendant's mine.  No negligence was charged in the statement of claim nor shown by the evidence, other than the employment of a minor under the age of sixteen in violation of the Act of June 15, 1911, P. L. 983.  The evidence showed that the boy was under the age of sixteen years.  The plaintiffs testified that they did not know his exact age until after the date of his death, when in making search for a record of his age, they discovered it in an old memorandum book which had been kept by the father.  The evidence showed that the father knew that the boy was working in the mine, and that his mother received his wages.

Verdict and judgment for plaintiffs for $1,500.  Defendant appealed.

*Errors assigned* were in refusing defendant's motion for judgment n. o. v.

*Don Rose,* for appellant, cited: Raab v. Allegheny Coal Co., 64 Pitts. Leg. Jour. 284; McNulty v. Penna. Coal Co., 16 Luz. Leg. Reg. 357.

*George C. Bradshaw,* of *Thompson & Bradshaw,* for appellee.—Plaintiffs were entitled to recover: Jones v.

American Caramel Co., 225 Pa. 644; Valjago v. Carnegie Steel Co., 226 Pa. 514; Lenahan v. Pittston Coal Mining Co., 218 Pa. 311; Stehle v. Jaeger Automatic Machine Co., 220 Pa. 617; Hrabchak v. Del. & Hudson Co., 54 Pa. Superior Ct. 626; Krutlies v. Bulls Head Coal Co., 249 Pa. 162.

OPINION BY HEAD, J., October 8, 1917:

In the consideration of this appeal accuracy of thought will be promoted by a statement, as precise as possible, of the real question involved and the foundation on which it rests. The damages sought to be recovered represent the pecuniary value, to the plaintiffs, of the life of their son who was killed in the mine of the defendant company. Their cause of action, as set forth in their statement, is as follows: "Plaintiffs allege that the said accident was due to the negligence of the said defendant company in employing the said plaintiffs' son Stephen Telinko inside of the mine of the defendant company contrary to the Act of Assembly......of June 5, 1911, relating to the employment of minors under the age of sixteen in bituminous coal mines. Plaintiffs allege that their said son, at the time of his death, was under the age of sixteen, and it became and was the duty of the defendant company not to employ, nor allow, nor permit the said Stephen Telinko to work inside of the mine, etc." As the case was submitted to the jury, their verdict establishes the deceased son of the plaintiffs was in fact under sixteen years of age at the time of his death, which resulted from a fall of slate from the roof of the mine while he was there working under employment by the defendant company. The jury found for the plaintiffs and judgment was thereafter entered on their verdict. The defendant appeals.

Now the assignments of error upon which our judgment must rest are nominally two, really but one. The defendant seeks no new trial. It complains of no ruling made during the course of the trial. Its sole and single

proposition is that the learned judge committed reversible error in refusing to direct a verdict in its favor and in thereafter declining its motion for judgment non obstante veredicto.

It will be observed, from the language of the statement of claim we have quoted, it is not alleged the defendant was negligent because of the happening of the accident. The evidence does not disclose any failure on the part of the defendant to perform any duty imposed upon it by the law in the operation of its mine. For the purposes of this case then, we may assume the deceased lost his life by one of those unavoidable accidents incident to every hazardous employment. The negligence complained of and relied on was the violation by the defendant of the statutory law of Pennsylvania in employing a minor child under the age of sixteen years to work inside of its mine. Let us examine the statutes.

By the Act of May 1, 1909, P. L. 375, it was declared, "That from and after the passage of this act, no minor under the age of fourteen years shall be employed, permitted, or suffered to work, in, about, or for any bituminous coal mine or anthracite colliery or breaker." The legislature, in the same act, went on to provide that between the ages of fourteen years and sixteen years a minor might be employed after the employer had procured a certificate described in the act and otherwise followed its requirements. By the Act of June 15, 1911, P. L. 983, the legislature amended the previous act and raised the age limit, within which it was declared no minor could be employed inside of a bituminous coal mine, from fourteen to sixteen years; and this without regard to the presence or absence of the certificate referred to. The language of the first section separates work outside mines and collieries from work inside the mines. Section three uses this positive language, "That no minor under the age of sixteen years shall be employed, permitted or suffered to work, inside any coal mine," and further declares that no minor under the

age of sixteen years shall be employed in or about any establishment or industry mentioned in section one (which excludes work inside the mine) unless the employer procures the certificate thereinafter provided for. This certificate gives notice on its face of the nature and character of the service for which a minor under sixteen years of age may be lawfully employed. Such minor, the act states, "may be employed at labor in any coal-breaker, washery or other outside workings of a coal mine."

In Lenahan v. Pittston Coal Co., 218 Pa. 311, the Supreme Court, considering the Act of June 2, 1891, P. L. 176, said: "After full consideration we are unanimously of the opinion the legislature, under its police power, could fix an age limit below which boys should not be employed, and when the age limit was so fixed, an employer who violates the act by engaging a boy under the statutory age does so at his own risk, and if the boy is injured while engaged in the performance of the prohibited duties for which he was employed, his employer will be liable in damages for injuries thus sustained." The same doctrine is practically asserted in Valjago v. Carnegie Steel Co., 226 Pa. 514, and Hrabchak v. D. & H. Co., 54 Pa. Superior Ct. 626. There can therefore be no doubt a cause of action against the defendant company was made out. Could the trial judge have said, as matter of law, it was defeated because the plaintiffs contributed to bring about the lamentable injury of which they complain?

The strength of the appellant's argument seems to be devoted to the proposition last stated. It is clear enough, under the decisions cited, that if the boy had suffered an injury, not fatal, his mouth could not have been closed in seeking redress. The testimony of the plaintiffs themselves is barren of anything to support the conclusion they induced or brought about the employment of their son. They concede they knew he was working in the mine, and of course they did because he

worked in the room with his father and brought his wages home to his mother. Now let it be assumed the plaintiffs, like all other persons within the Commonwealth, were presumed to know the law. Yet they were not presumed, or certainly not conclusively presumed to know the exact age of their son. They testify they did not accurately know it until they obtained possession of a book in which the date of his birth had been written down shortly after that event occurred. It is not surprising that parents, of the class to which these plaintiffs belonged, separated for a considerable time from their native land and the records and associations that would cluster about their original home, might be uncertain of the exact age of a boy who was big, healthy and strong for his years. The credibility of these parents was, of course, a question for the jury. The learned trial judge instructed the jury that if these plaintiffs, knowing their son to be under sixteen years of age, had consciously or wilfully induced or brought about his employment inside the mine, they could not recover. The verdict of the jury declared they did no such thing.

It is to be observed the prohibition of the statute is directed to the employer, not to the parents. It is the employer who is forbidden, not merely to employ a minor under the age of sixteen years, but as well not to permit or suffer him to work inside a coal mine. As we have said, the plaintiffs' case disclosed nothing from which the court could determine, as matter of law, the existence of contributory negligence on their part save the single fact of their knowledge that their son worked inside the mine. We do not think the exhibition of this single fact can or should relieve the defendant from its obligation to observe, in letter and in spirit, the requirement of the statute. We have not to consider this case merely from the viewpoint of the parents as if none other but they were interested in the death of their youthful son. We learned in our boyhood days one

famous answer to the pregnant inquiry "What constitutes a state?"   If it in truth be the first and most important duty of the state to raise men who have sound minds in sound bodies, then there is but little question as to the wisdom and good policy of the statute laws of the Commonwealth which have for their object the protection of the bodies and the development of the minds of the youth of the land who are afterwards to become those who constitute the state.   We think it would be destructive of that wise policy, which puts upon the employer of youthful labor the obligation to see that the statutory limitations are observed, were we to hold the established violation of law in this case could be condoned by the fact the father knew his son was working in the mine and the mother received his wages.   The father admits he agreed with the mine superintendent that he would look after the boy as well as he could while working inside the mine.   We cannot, however, perceive the force of the argument, built upon such a statement, that the father had taken upon his own shoulders the responsibility which the law casts upon the shoulders of the employer.

After a careful consideration of this interesting case, we cannot escape the conclusion it was properly tried in the court below and that the record of the trial discloses no reversible error.   The assignments of error are overruled.

Judgment affirmed.