DALY, Respondent, *v.* SWIFT & CO., Appellant.

(No. 6,747.)

(Submitted April 15, 1931.  Decided May 20, 1931.)

[300 Pac. 265.]

54

*Mr. John K. Claxton* and *Mr. A. C. McDaniel,* for Appellant, submitted a brief and argued the cause orally.

Mr. *Lowndes Maury* and Mr. *R. Lewis Brown,* for Respondent, submitted a brief; Mr. *Brown* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment in favor of plaintiff, Philip Daly, and against Swift & Co., a corporation, for the sum of $2,000 damages, with interest, for the death of plaintiff's infant son resulting from injuries received while working in the basement of defendant's meat packing-house at Butte.

Stripped of its formal parts and condensed, the complaint filed alleges that in August, 1928, defendant entered into a contract with the York Ice Company for the removal of an old ice plant from the basement and the installation of a new one. The removal of the old plant could not be effected by the use of defendant's freight elevator, as defendant did not agree to the "boring" of the wall of the building. The York Ice Company sold the old ice plant to David Mottleson, a junk dealer, on condition that he remove it, and, although the ice company and Mottleson were "so-called independent contractors," yet, in making the contracts and doing the work, they were "furthering solely and entirely the plan of work and the business desires and designs of defendant" within its plant, "occupied, owned, controlled and possessed by it." A part of the machinery to be removed was an iron wheel, six feet in diameter and ten inches thick, which was divided into halves, each half weighing approximately 1,350 pounds. It is alleged that the moving of a half of the wheel required the services of four or more grown men of skill and experience, which fact was known to Swift & Co., but who negligently permitted the moving by only two men and the child, Stewart Daly; that this work was "inherently and intrinsically of greatest danger to all persons concerned about the work, even if due and extraordinary care were exercised," and the duty to exercise due care was nondelegable;

that the work constituted an attractive and dangerous nuisance to boys of the age of Stewart Daly, and defendant negligently failed to prevent his access thereto.

It is further alleged that young Daly, under twelve years of age, was, without the knowledge of his parents, employed by Mottleson "as a casual servant of Mottleson and was an invitee of Swift & Company" in and about the basement and elevator for a period of four days, helping to remove the machinery. On the fourth day, by reason of inherent defects in the elevator and its unskilled handling by Mottleson, a half of the wheel described was upset, crushing the boy's foot, from which injury he died three days later. The actions of the parties at the time of the catastrophe are described in detail.

The complaint further alleges that Swift & Co. knowingly, negligently and wrongfully permitted the boy to be employed in its place of business, unknown to his parents, "and such conduct of Swift & Company was a proximate and efficient and direct cause of the injury."

Defendant filed a demurrer in which, in addition to the statement that the complaint does not state facts sufficient to constitute a cause of action, it alleged that the complaint was uncertain, ambiguous and unintelligible in many particulars pointed out. The demurrer was overruled, and thereafter defendant answered, denying liability, but admitting the facts alleged. The answer then sets up three "affirmative" defenses. The first of these in effect admits knowledge of the boy's employment and that he was working in defendant's building as alleged, but alleges that he was employed by Mottleson and took orders from him alone, and that "any injuries inflicted upon said Stewart Daly were caused by the said negligence of his fellow-servant and employer." The second defense is that the ice company and Mottleson were independent contractors and neither was under the control of the defendant. The third was evidently abandoned and need not be mentioned.

The proof on the part of plaintiff established the facts as alleged, except that the superintendent and foreman of defendant company admitted knowledge of the boy's presence and activities in carrying tools and picking up bolts on but one day, the day before he was injured, and as a part of their testimony stated that Mottleson was instructed not to attempt to operate the elevator, but to call upon an employee of defendant for that service, which instruction he disobeyed and was operating the elevator himself at that time.

Plaintiff having rested, defendant moved for nonsuit, and, on the overruling of the motion, submitted the case on plaintiff's testimony; consequently there is no conflict in the evidence.

1. The defendant first contends that the court erred in overruling its special demurrer to the complaint.

Recognizing the rule declared in *Pue* v. *Wheeler,* 78 Mont. 516, 255 Pac. 1043, that answering over waives demurrer on the grounds of uncertainty, ambiguity and unintelligibility, counsel declare that it is based solely on *Lynch* v. *Bechtel,* 19 Mont. 548, 48 Pac. 1112 "which is without reason or authority," and, without the citation of authority to the contract, insist that these cases should be overruled.

While, in the cases criticised, this court did not state the reason for the rule or cite authorities in support of it, the reason for the rule is that the objections urged have to do only with the manner in which the necessary allegations of a complaint are set out, and do not suggest that any necessary element of plaintiff's cause of action is lacking. When, therefore, notwithstanding the original contention that a complaint is so uncertain or ambiguous or unintelligible that defendant cannot frame an answer to it, the defendant answers, he, in effect, concedes that he was wrong in his contention and admits the sufficiency of the complaint and his understanding thereof to enable him to frame his answer.

The rule announced in *Pue* v. *Wheeler,* above, is the general rule, it being generally declared that such action amounts to a withdrawal of the demurrer. The following

rule is in accord with our decisions on the subject: "If the demurrant wishes to take advantage of any supposed error in overruling the demurrer, he must let final judgment be entered upon it; for if he shall answer, after such ruling, he waives any objection to the pleading, except for the two radical defects, and the question cannot be afterwards raised." (Bliss on Code Pleading, 3d ed., 634.) "The general rule seems to be well settled"—citing authorities. (*Lonkey* v. *Wells*, 16 Nev. 271.) It originally prevailed in California, but was abrogated after the legislature of that state had provided that "a demurrer is not waived by filing an answer at the same time" (Cal. Code Civ. Proc. 472), the court declaring "*a fortiori* it is not waived by filing an answer, upon leave given by the court, subsequently to the filing and overruling of the demurrer" (*Curtiss* v. *Bachman*, 84 Cal. 216, 24 Pac. 379). We have no such provision as section 472, above. Defendant waived its special demurrer by answering over.

2. The principal question presented is whether or not the complaint states a cause of action (failure to do so being one of the "radical" defects mentioned by Bliss as an exception to the rule just announced), showing, as it does, that deceased was in the employ of Mottleson as an independent contractor.

Section 3095, Revised Codes 1921, provides that "any person * * * or corporation engaged in business in this state, or any agent, officer, foreman, or other employee having control or management of employees, or having the power to hire or discharge employees, who shall knowingly employ or permit to be employed any child under the age of sixteen years, to render or perform any service or labor, whether under contract of employment or otherwise, in, on, or about any * * * freight elevator, or where any machinery is operated * * * shall be guilty of a misdemeanor."

Counsel for defendant assert that this statute has no application to this case, first contending that it is rendered inapplicable, as defendant had no "control or management"

of, or power "to hire or discharge," Stewart Daly. These phrases, however, follow the enumeration of employees of the person or corporation doing business, who may also be liable under the Act, without a comma, and therefore have that enumeration as a predicate. Omitting as, practically, a parenthesis, that portion of the statute, we have the applicable provisions of the Act reading: "Any * * * corporation * * * who [which] shall knowingly employ or permit to be employed any child under * * * sixteen years, to render or perform any service or labor, whether under contract of employment or otherwise, in, on, or about any * * * freight elevator * * * shall be guilty of a misdemeanor."

Had plaintiff sought to hold the superintendent or foreman, the fact that such employee of the company had no control over the boy who was injured and no power to discharge him would have been a defense to the action, and the statute under consideration would have been inapplicable, but where the action, as here, is against the owner or operator alone, these matters are unimportant; the question being whether or not such a defendant knowingly permitted the boy to be worked in or about any of the prohibited employments.

The Act relied upon, generally referred to as the Child Labor Law, is a penal statute. "Evidently the legislature considered the question of the employment of children under sixteen years of age in certain occupations as an injury to the public, and therefore denounced it as a misdemeanor and punishable as such, although injury might not result to any particular individual; the idea of the infliction of the punishment being for the public good, and to deter others from the commission of the offense." (*Burke* v. *Montana Power Co.,* 79 Mont. 52, 255 Pac. 337, 339.)

However, the controlling thought back of this protection of the public from injury is the preservation of our children from injury or death, that they may reach the status of manhood and womanhood still possessing all of their members and faculties, and may become useful citizens, and, in addition thereto,

the humanitarian purpose of this section and the next succeeding one, imposing a correlative prohibition upon the parents of such children under like penalties (sec. 3096), is to prevent commercial exploitation of minors of tender years to their detriment and loss of childhood's birthright of carefree enjoyment of life and liberty. It is well said that "the interest which the state has in the physical, moral, and intellectual well-being of its members warrants * * * the exercise of every just power which will result in preparing the child, in future life, to support itself, to serve the state, and, in all its relations and duties of adult life, to perform well and capably its part." (*People* v. *Ewer*, 141 N. Y. 129, 38 Am. St. Rep. 788, 25 L. R. A. 794, 36 N. E. 4, 5.)

Therefore a violation of the statute, though merely penal, ▮ forms the basis of an action for damages for injuries resulting from such labor as the employment entails, and the general rule that the violation of a statute enacted for the protection of the public is negligence *per se* (*Stroud* v. *Chicago, M. & St. P. R. Co.*, 75 Mont. 384, 243 Pac. 1089) applies (*Evans* v. *Dare Lumber Co.*, 174 N. C. 31, 30 A. L. R. 1498, 93 S. E. 430; *McGowan* v. *Ivanhoe Mfg. Co.*, 167 N. C. 192, 82 S. E. 1028).

As a corporation is without sensibilities, it can only have ▮ vicarious knowledge of any fact, and the knowledge of its managing officers must necessarily constitute the knowledge required by the statute. (*Wells-Dickey Co.* v. *Embody,* 82 Mont. 150, 266 Pac. 869.)

On the contention that the employment must have been by ▮ the defendant or there is no liability, defendant relies upon the decisions in *Rugart* v. *Keebler-Weyl Baking Co.,* 277 Pa. 408, 121 Atl. 198, and *Brilliant Coal Co.* v. *Sparks,* 16 Ala. App. 665, 81 South. 185, 187, but neither of the decisions is helpful here. While the Pennsylvania case holds that the owner of the premises in question was not liable for injuries sustained by a child brought on to the premises by, and in the employ of, another, the Act (Act Pa. May 2, 1905, P. L. 352, sec. 5) there construed merely provided that "it

shall be unlawful for the owner * * * or other person in charge of any establishment * * * to employ any child," while our statute makes it unlawful to either employ or permit any child to labor on the premises "whether under contract of employment or otherwise." In the Alabama case the court merely held an instruction improper under a pleading which failed to charge the employment of the minor by the defendant company or its authorized agent. In that case, construing a statute similar to ours, the court said: "It is the duty of every mine owner, who operates or retains supervision over a mine that is being operated, by agent or contractor, to see to it that no child under sixteen years of age is employed in the mine."

Under our statute and those of similar import, it is held that the fact that the boy was employed by, and working for, an independent contractor, is immaterial; it is the fact that a child under the forbidden age is permitted to perform services or labor in a dangerous place which gives rise to liability or prosecution, and not the fact of hiring.

Here the defendant company was in full possession of the building and the elevator at all times during the period of employment of the boy, and it was its duty, although it could not have discharged him from his employment, knowing that he was engaged in forbidden labor, to see to it that he should not be suffered or permitted to work in its building and "in and about" its elevator in violation of the penal statute. (*Swift & Co.* v. *Daly,* 44 Fed. (2d) 40 (C. C. A., Ninth Circuit), affirming a judgment in favor of the administratrix of Stewart Daly's estate; *Evans* v. *Dare Lumber Co.,* above; *Purtell* v. *Philadelphia etc. Coal & Iron Co.,* 256 Ill. 110, Ann. Cas. 1913E, 335, 43 L. R. A. (n. s.) 193, 99 N. E. 899.)

The complaint states facts sufficient to constitute a cause of action against this defendant, and the allegations thereof are established by the evidence adduced on behalf of plaintiff and not contradicted by defendant.

3. It is asserted that plaintiff was not entitled to prevail, for the reason that the proximate cause of the boy's

injury was the negligence of Mottleson in the operation of the elevator contrary to instructions, and not that he was permitted to work in a prohibited place.

Under the Alabama Act, to which reference is heretofore made, it is held that the responsible party is "an absolute insurer of the child's safety, against injury, while it is in and about the forbidden place" (*Brilliant Coal Co.* v. *Sparks,* above, citing *De Soto Min. & Dev. Co.* v. *Hill,* 179 Ala. 186, 60 South. 583; *Cole* v. *Sloss-Sheffield Co.,* 186 Ala. 192, Ann. Cas. 1916E, 99, 65 South. 177; but, whether this be so or not, the negligence of the defendant company continued up to and including the moment of the accident in which the boy was injured. This is enough to show "a causal connection and the law will refer the injury to the original wrong as its proximate cause." (*Perry* v. *Western Union Tel. Co.,* (C. C. A.) 27 Fed. (2d) 197, 199.)

By reason of the fact that the boy was permitted to work in a forbidden place, he was exposed to the danger from which the statute sought to protect him, and but for that fact he would not have been injured. (*Star Fire Clay Co.* v. *Budno,* (C. C. A.) 269 Fed. 508; *Klicke* v. *Allegheny Steel Co.,* 200 Fed. 933, 119 C. C. A. 317.)

The negligence of Mottleson but concurred with that of the defendant company, and does not relieve defendant from liability. (*Freeman* v. *Sand Coulee Coal Co.,* 25 Mont. 194, 64 Pac. 347.) The unlawful working of the boy in the forbidden place is deemed the proximate cause of the injury. (*Mc-Gowan* v. *Ivanhoe Mfg. Co.,* above; *Waterman Lumber Co.* v. *Beatty,* (Tex. Civ. App.) 204 S. W. 448.)

4. In an action such as this the defenses of contributory negligence and assumption of risk are not available. Sound policy dictates that statutes such as ours should be deemed "a declaration that children under the specified age do not possess the judgment, discretion and caution essential to engagement in the prescribed occupation or industry" (18 R. C. L. 635), and therefore cannot assume the risk or be guilty of contributory negligence (*Glucina* v. *Goss Brick Co.,* 63 Wash.

401, 42 L. R. A. (n. s.) 624, 115 Pac. 843; *Casper* v. *Lewin,* 82 Kan. 604, 49 L. R. A. (n. s.) 526, 109 Pac. 657; *De Soto Min. & Dev. Co.* v. *Hill,* above; *Lenahan* v. *Pittston Coal Min. Co.,* 218 Pa. 311, 120 Am. St. Rep. 885, 12 L. R. A. (n. s.) 461, 67 Atl. 642).

5. Error is predicated on the giving of instructions on plaintiff's theory of the case as to liability of defendant company. Having upheld this theory, there is no merit in these specifications.

6. Likewise we need not devote space here to the consideration of the court's refusal to give instructions on defendant's theory. As a matter of fact, there being no conflict in the evidence and the only questions presented for determination being those of law, the court, in effect, instructed the jury to return a verdict for plaintiff, submitting to it only the matter of damages. There was no occasion for the giving of the offered instructions, even if they correctly stated the law.

7. Error is predicated upon the admission of testimony as to the wages of a man in Butte. There is no contention that the verdict is excessive, and, if error was committed in this regard, it was harmless. The court correctly instructed the jury as to the measure of damages (*Burns* v. *Eminger,* 84 Mont. 397, 276 Pac. 437), and thereunder the jury returned a verdict for $2,000, with interest from the date of the injury.

8. Defendant contends that the verdict is contrary to law, as the court did not instruct the jury that it could add interest. Section 8663, Revised Codes 1921, provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." This section warrants an award of interest on damages allowed for the negligent destruction of property. (*Phelps* v. *Great Northern R. Co.,* 66 Mont. 198, 213 Pac. 610; *Wright* v. *City of Butte,* 64 Mont. 362, 210 Pac. 78; *Dewell* v. *Northern Pacific R. Co.,* 54 Mont. 350, 170 Pac. 753; *Caledonia Ins. Co.* v. *Northern Pacific R. Co.,* 32 Mont. 46, 79 Pac. 544.) But.

the universal rule, at least in the absence of statute, is that interest cannot be allowed on damages awarded for personal injuries. (See discussion and cases digested in Ann. Cas. 1913B, 207; Ann. Cas. 1914D, 996; 18 L. R. A. 449.) The only case we have found seeming to depart from this rule is *Ell* v. *Northern Pacific R. Co.,* 1 N. D. 336, 26 Am. St. Rep. 621, 12 L. R. A. 97, 48 N. W. 222, wherein the court conceded that such a statute as our section 8663, above, authorized the jury to award interest in such cases, but held that an instruction to award interest was erroneous, in that it did not leave the matter to the discretion of the jury.

The justification for computing interest on a sum ascertained to be due from a defendant to a plaintiff, whether on contract or as damages, is that the defendant has withheld that which should have been paid on a day certain and thus deprived the plaintiff, not only of the principal sum, but of the interest which it would have earned during the period of its withholding; therefore interest should only be recoverable when the amount which will discharge defendant's liability is ascertained or is ascertainable so that payment or tender could have been made at the time it should have been made. This condition exists as to those cases where damages are sought for injury to, or destruction of, property, but does not exist in cases of personal injury where the damage done is not susceptible of definite or accurate computation.

Speaking of liability for damages for such injuries, the supreme court of Tennessee said: "It never creates a debt, nor becomes one, until it is judicially ascertained and determined. Only from that time can it draw interest; and interest as damages cannot at any preceding time be added to it without changing and superadding a new element, never given in this state or any other in a similar case, so far as our investigation has discovered." (*Louisville Ry.* v. *Wallace,* 91 Tenn. 35, 14 L. R. A. 548, 17 S. W. 882, 883.)

In the leading case of *Western etc. R. Co.* v. *Young,* 81 Ga. 397, 12 Am. St. Rep. 320, 7 S. E. 912, the court said: "There is no authority of law for treating the jury as clothed

with a double discretion,—a discretion to be exercised, first, in fixing the amount of the plaintiff's damages, and then in augmenting that amount by an assessment, in the nature of interest, for detention of the money or delay of payment. As long as the principal sum was not only unascertained, but unascertainable, save by the enlightened conscience of impartial jurors, the law neither appointed a day of payment, nor exacted any tender. * * * To add interest to discretionary damages is to multiply uncertainty by certainty; the indefinite by the definite; a mixture of incongrous elements which subjects one of the parties to the burden, and gives the other the benefit of both kinds. If the time of realizing discretionary damages is to be considered (and doubtless the jury may consider it), it should be left as one of the terms of the general problem of damages, unfixed like all the rest of the terms.''

Section 8663, above, has no application to such a case as this. The addition of interest to the award was erroneous.

9. It is contended that the court erred in denying defendant a continuance for which application was made at the opening of the trial, on the ground of the absence of Mottleson as a witness for defendant. The affidavit filed on motion for continuance fails to show due diligence on the part of defendant to secure the attendance of the witness, as it does not show that a subpoena was issued for him any appreciable time before the commencement of the trial; nor does it show that, if the continuance were granted, his attendance could be secured at a future date, other than, as an inference to be drawn from the statement that the sheriff ''received information'' that Mottleson was out of the state ''and would not return to Butte, Montana, for several weeks.'' The only importance of Mottleson's testimony, as disclosed by the affidavit, is the statement that he would testify that he had made settlement with the parents of the minor, but a settlement with a joint tort-feasor is not pleaded as a defense.

The granting or refusing to grant a continuance is within the sound legal discretion of the trial court, and its action

will only be reversed on a showing of abuse of that discretion. (*St. George* v. *Boucher,* 84 Mont. 158, 274 Pac. 489.) The court might have been justified in its denial of the motion on the ground that it came too late; at any rate, there is no such showing of abuse of discretion in this regard as to warrant a reversal.

The cause is remanded to the district court of Silver Bow county, with direction to strike from the judgment the amount added to the award as interest from the date of injury to date of judgment, and, as modified, the judgment will be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.